# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BETH D.,

      Plaintiff,

                                  **Case No. 2:20-cv-446**

   v.                           **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Beth D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On October 18, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since August 15, 2016. R. 103, 121, 202−08. The application was denied initially and upon reconsideration. R. 122−26, 128−30. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 67, 133−34. Administrative Law Judge Myriam C. Fernandez Rice ("ALJ") held a hearing on October 17, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42−65. In a decision dated December 31, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 15, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 20−36. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 15, 2019. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 6, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[2] On June 9, 2020, the case was reassigned to the undersigned. ECF No. 14. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.

Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018

WL 1509091, at *4.

    The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

    Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 51 years old on her alleged disability onset date. R. 34. She met the insured status requirements of the Social Security Act through June 30, 2020. R. 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 15, 2016, Plaintiff's alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: congestive heart failure, atrial fibrillation, status post ablation, depression, post-traumatic stress disorder ("PTSD"), and anxiety disorder. R. 22–23. The ALJ also found that Plaintiff's diagnosed history of hypertension, high blood pressure, and obesity were not severe. R. 23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23–25.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 25–34. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a nanny and salesperson. R. 34.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 74,000 jobs as an inspector and hand packager; approximately 27,000 jobs as a mail sorter; and approximately 430,000 jobs as a small products assembler—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 35. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 15, 2016, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 16. The Commissioner takes the position that the administrative decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Azra Mansoor, M.D.

Azra Mansoor, M.D., Plaintiff's treating psychiatrist, began seeing Plaintiff once a month on October 24, 2016, for medication monitoring. R. 504, 508. In an undated,[3] five-page, check-the-box, and fill-in-the-blank form entitled "Mental Impairment Questionnaire." R. 504−08 (Ex. 15F, "Dr. Mansoor's Questionnaire opinions"), Dr. Mansoor diagnosed persistent depressive disorder, bipolar disorder, generalized anxiety disorder, and obsessive compulsive disorder. Plaintiff's prescribed medications were listed as Seroquel, Zoloft, Ambien, and Klonopin. R. 504. Plaintiff stated that she was unable to work because of the severity of her anxiety, sadness, and inability to stay on task and focus, although Dr. Mansoor noted that Plaintiff had not required hospitalization or inpatient treatment for her symptoms. *Id*. Dr. Mansoor identified the following signs and symptoms to support his diagnoses and assessment: depressed mood, persistent or generalized anxiety, feelings of guilt or worthlessness, hostility or irritability, manic syndrome, anhedonia, decreased energy, obsessions or compulsions, difficulty thinking or

---

[3] Dr. Mansoor stated on the form that the date of his most recent exam was April 11, 2017, and the form reflects a fax transmittal date of June 8, 2017. R. 504.

concentrating, easy distractibility, flight of ideas, intrusive recollections or a traumatic experience, recurrent panic attacks, and difficulty sleeping. R. 505. He did not believe that Plaintiff's psychiatric conditions exacerbated pain or any other physical symptoms. R. 506.

Dr. Mansoor addressed Plaintiff's ability to perform mental activities in a competitive environment on a sustained and ongoing basis (defined as eight hours per day, five days a week). R. 507.[4] Dr. Mansoor initially indicated no to mild limitations in Plaintiff's ability to remember locations and work-like procedures, but eventually changed that assessment to moderate to marked. *Id*. Dr. Mansoor initially indicated moderate limitations in Plaintiff's ability to understand, remember, and carry out simple one to two step instructions, and understand and remember detailed instructions, but eventually changed that assessment to marked limitations. *Id*. Plaintiff's ability to adhere to basic standards of neatness was moderately limited. *Id*. Plaintiff was moderately to markedly limited in her ability to carry out detailed instructions; perform activities within a schedule; be punctual; sustain ordinary routine without supervision; work in coordination with others; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; and maintain socially appropriate behavior. *Id*. She had marked limitations in her ability to maintain attention and concentration for extended periods; make simple work-related decisions; complete a normal workday; perform at a consistent pace; ask simple questions or request assistance; respond appropriately to workplace changes; travel in unfamiliar places; use public transportation; set realistic goals and make plans independently. Dr. Mansoor responded "Unknown" to questions relating to Plaintiff's limitations

---

[4] "Mild" limitations were defined as those that rarely interfere with ability; "moderate" symptoms occasionally (up to one-third of an eight-hour workday) interfere with ability; "moderate-to-marked" limitations frequently (one-third to two-thirds of an eight-hour workday) interfere with ability; and "marked" limitations constantly (more than two-thirds of an eight-hour workday) interfere with ability. *Id*.

in her ability to be aware of hazards and interact appropriately with the public. *Id*. According to Dr. Mansoor, Plaintiff's symptoms and related limitations began in October 2016. R. 508; *see also* R. 504 (noting that Plaintiff reported that both her parents died in 2016).

Dr. Mansoor opined that Plaintiff was not a malingerer and that diagnoses and limitations were expected to last at least twelve months. R. 504. He further opined that Plaintiff experiences episodes of decompensation or deterioration in a work or work-like setting that cause her to withdraw from the situation and/or experience an exacerbation of symptoms: "Pt is unable to work at this time [on] account of severity of symptoms[.]" R. 506. Dr. Mansoor went on to opine that Plaintiff would likely be absent from work more than three times per month. R. 508. *Id*.

B.    **Lucille Green, A.P.N.**

Lucille Green, A.P.N., began seeing Plaintiff on October 24, 2016, every three days for counseling and every three weeks for medical monitoring. R. 516. On August 20, 2018, Nurse Green opined that Plaintiff was "unable to return to work at any work setting[.]" R. 483, 526, 547, 560, 566 ("Nurse Green's August 2018 opinion").

On September 25, 2018, Nurse Green completed a five-page, check-the-box, and fill-in-the-blank form entitled "Psychiatric/Psychological Impairment Questionnaire." R. 516−20 (Ex. 17F, "Nurse Green's September 2018 opinions"). She major depressive disorder, dysthymic disorder, post-traumatic stress disorder, and generalized anxiety disorder. R. 516. Plaintiff's prescribed medications were Rexulti, Ambien, Zoloft, and Klonopin; no side effects from these medications were listed. *Id*. Signs and symptoms supporting Plaintiff's diagnoses and Nurse Green's assessment were listed as depressed mood; persistent or generalized anxiety; feelings of guilt or worthlessness; irritability; obsessions or compulsions; difficulty thinking or concentrating; easy distractibility; poor memory; intrusive recollections of a traumatic

10

experience; persistent irrational fears; recurrent panic attacks; anhedonia/pervasive loss of interests; appetite disturbances/weight change; decreased energy; intense and unstable interpersonal relationships; social withdrawal or isolation; insomnia. R. 517. According to Nurse Green, Plaintiff's psychiatric conditions did not exacerbate pain or any other physical symptoms. R. 518.

Nurse Green assessed Plaintiff's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis (defined as eight hours per day, five days a week). R. 519.[5] Nurse Green initially indicated moderate to marked limitations in Plaintiff's ability to remember locations and work-like procedures, understand and remember one-to-two-step and detailed instructions; and be aware of hazards, but she eventually changed that assessment to marked limitations. *Id*. Nurse Green also found that Plaintiff had marked limitations in her ability to carry out simple, one-to-two-step instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; be punctual; sustain ordinary routine without supervision; work in coordination with others; make simple work-related decisions; complete a normal workday; perform at a consistent pace; interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; maintain socially appropriate behavior; adhere to basic standards of neatness; respond appropriately to workplace changes; be aware of hazards; travel in unfamiliar places; use public transportation; set realistic goals; and make plans independently. *Id*.

---

[5] "Mild" limitations were defined as those that rarely interfere with ability; "moderate" symptoms occasionally (up to one-third of an eight-hour workday) interfere with ability; "moderate-to-marked" limitations frequently (one-third to two-thirds of an eight-hour workday) interfere with ability; and "marked" limitations constantly (more than two-thirds of an eight-hour workday) interfere with ability. *Id*.

Nurse Green did not believe that Plaintiff was a malingerer, although she noted that Plaintiff did not require hospitalization or inpatient treatment for her symptoms; she expected Plaintiff's diagnoses and symptoms to last at least twelve months. R. 516. Plaintiff experiences episodes of decompensation or deterioration in a work or work-like setting that cause her to withdraw from the situation and/or experience an exacerbation of symptoms, and Nurse Green commented that Plaintiff's "panic attacks are exacerbated in a work-like setting, as are fatigue, worry, decreased concentration, intrusive thoughts." R. 518. According to Nurse Green, Plaintiff would likely be absent from work more than three times per month. R. 520.

**C.      Lidia Abrams, Ph.D.**

At the request of Plaintiff's counsel, Lidia Abrams, Ph.D., a licensed psychologist, examined Plaintiff on two occasions. R. 500−03, 510−14. On August 17, 2018, Dr. Abrams administered three tests to Plaintiff: Millon Clinical Multiaxial Inventory ("MCMI-IV"), Rotter's Incomplete Sentences Test – Adult Version, and Mini-Mental Status Exam ("MMSE"). R. 502. The MCMI-IV is a psychological assessment tool intended to provide information on psychopathology, including specific diagnosable psychological disorders. *Id*. It consists of 175 true-false questions and takes about half an hour to complete in its computerized version and the output includes three validity scales and twenty-four clinical scales. *Id*. Dr. Abrams noted that Plaintiff completed "this test in a normal amount of time and responded to all the items." *Id*. Dr. Abrams further noted that the validity scales of this test showed a tendency to magnify the level of experienced illness and, on the clinical syndrome scales, Plaintiff scored as having prominent anxiety disorder, persistent depression, somatic symptomatology, post-traumatic stress, and prominent major depressive disorder. *Id*.

On the Rotter's Incomplete Sentences Test, Plaintiff "gave brief but well-written

12

responses[.]" *Id*. Dr. Abrams reported that Plaintiff "scored as having a minimal impairment on the MMSE[,]" noting as follows:

> She is a 53-year-old woman who drove herself to this office unaccompanied and on time. She was casually dressed and adequately groomed. She was alert and fully oriented. She was pleasant, cooperative and forthcoming. She presented with slight psychomotor retardation. She was able to stay focused and concentrated for the duration of the evaluation, but she reports difficulty concentrating in her daily life, for example doing her bills. She notes that she has to write things down to remember, for example appointments.

*Id*. Dr. Abrams noted that Plaintiff's speech was linear and goal-oriented; thought processes were coherent and connected; psychotic symptoms were neither observed nor elicited; no delusions, hallucinations, phobias, or obsessions; fair insight; not intoxicated or under the influence of illegal substances; no suicidal, self-destructive or homicidal ideations, intent, or plans. R. 503. Dr. Abrams diagnosed major depressive disorder (severe, single episode), other specified trauma and stressor-related disorder − persistent complex bereavement disorder, ruling out dependent personality disorder. *Id*. Dr. Abrams concluded as follows:

> [Plaintiff] was an adequately-functioning adult until the death of both her parents two years ago. However, she did have a strongly dependent personality and tendencies towards depressive and anxiety. It appears that her dependence on her parents kept [Plaintiff] functioning. Since her parents died, [Plaintiff] has fallen into a severe depression. She has continued to suffer symptoms of complex bereavement disorder. She has sought out appropriate treatment for her condition, including psychotropic treatment and intensive outpatient mental health treatment. with limited success. She is now returning to intensive outpatient treatment due to her continued low functioning. Her condition has continued for about two years. Her prognosis regarding her ability to become fully functioning and gainfully employed in the future is guarded.

*Id*.

On August 31, 2018, Dr. Abrams examined Plaintiff a second time, R. 510, and on September 9, 2018, she completed a five-page, check-the-box, and fill-in-the-blank form entitled "Psychiatric/Psychological Impairment Questionnaire." R. 510−514 ("Dr. Abrams' September

2018 opinions"). Dr. Abrams left blank questions asking whether Plaintiff's diagnoses and limitations were expected to last twelve months and whether Plaintiff was a malingerer. R. 510. She identified Plaintiff's signs and symptoms supporting the diagnoses and assessment as follows: depressed mood; persistent or generalized anxiety; feelings of guilt or worthlessness; obsessions or compulsions; difficulty thinking or concentrating; poor memory (immediate and recent); intrusive recollections of a traumatic experience; anhedonia/pervasive loss of interests; appetite disturbances/weight change; decreased energy; pathological dependence, passivity, or aggressiveness; psychomotor abnormalities (retardation); social withdrawal or isolation; and difficulty sleeping. R. 511. Plaintiff's psychiatric conditions did not exacerbate pain or any other physical symptoms. R. 512.

In an assessment of Plaintiff's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis (defined as eight hours per day, five days a week), R. 513,[6] Dr. Abrams found that Plaintiff had none to mild limitations in her ability to interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; and adhere to basic standards of neatness. *Id.* Plaintiff had moderate limitations in her ability to remember locations and work-like procedures; understanding and remember one-to-two-step and detailed instructions; carry out simple, one-to-two-step instructions; work in coordination with or near others; respond appropriately to workplace changes; be aware of hazards; travel to unfamiliar places; use public

---

[6] "Mild" limitations were defined as those that rarely interfere with ability; "moderate" symptoms occasionally (up to one-third of an eight-hour workday) interfere with ability; "moderate-to-marked" limitations frequently (one-third to two-thirds of an eight-hour workday) interfere with ability; and "marked" limitations constantly (more than two-thirds of an eight-hour workday) interfere with ability. *Id.*

transportation; and set realistic goals. *Id.* Plaintiff had moderate to marked limitations in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule; consistently be punctual; make simple work-related decision; and make plans independently. *Id.* Plaintiff had marked limitations in her ability to sustain ordinary routine without supervision; complete a workday without interruptions from psychological symptoms; and perform at a consistent pace without rest periods of unreasonable length or frequency. *Id.* Dr. Abrams was "Not sure" how often Plaintiff was likely to be absent from work as a result of her impairments or treatment. R. 514. According to Dr. Abrams, Plaintiff's symptoms and related limitations had existed for at least two years. *Id.*

## V.     DISCUSSION

### A.     RFC and Evaluation of Medical Opinions

Plaintiff contends that the ALJ erred in crafting Plaintiff's RFC. *Plaintiff's Brief*, ECF No. 16, pp. 16–30. Plaintiff specifically argues that the ALJ erred in weighing the opinions of her treating psychiatrist, Azar Mansoor, M.D., her treating nurse, Lucille Green, A.P.N., and her examining psychologist, Lidia Abrams, Ph.D. *Id.* Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*,

777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to

include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in

the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a

limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include

a limitation that is not supported by any medical evidence if the ALJ finds the impairment

otherwise credible").

     Here, the ALJ determined that Plaintiff had the RFC to perform light work with certain

additional exertional and nonexertional limitations, as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) with no ladders, ropes or scaffolds; frequent balancing; and occasional
> climbing ramps and stairs, stooping, crouching, crawling, and kneeling. The
> claimant must avoid concentrated exposure to temperature extremes, wetness,
> humidity, fumes, odors, dusts, gases and hazards, such as moving machinery and
> unprotected heights. The claimant is further limited to simple, routine and repetitive
> tasks in a low-stress setting, defined as having only occasional changes in work
> setting and only occasional interaction with the public.

R. 25. In making this determination, the ALJ detailed years of record evidence regarding

Plaintiff's mental impairments,[7] including, *inter alia*, the fact that Plaintiff's course of treatment

regarding her mental impairments has been routine and conservative; Plaintiff reported an

increase in her anxiety and depression with her father's death in January of 2016, and began

counseling for the first time in October of 2016; during her initial counseling session, the record

indicated that Plaintiff's symptoms were severe enough to cause moderate functional impairment

and the mental status examination was remarkable for sad/depressed and anxious mood, labile

affect and feelings of helplessness and guilt, although Plaintiff was cooperative with good eye

---

[7] The Court focuses on the evidence related to Plaintiff's mental impairments, since it is that
issue that forms the bases of Plaintiff's challenges.

contact, normal speech, goal directed thought processes, intact cognition, intact memory and judgment, intact language, intact short and long-term memory, and intact concentration and attention; an October 31, 2016, mental status examination was unchanged except that Plaintiff was found to have only a mild impairment in social functioning and activities of daily living; on November 3, 2016, Dr. Mansoor reported that Plaintiff was socially appropriate, did not exhibit any impairments, and was able to function on her base level and a mental status examination was relatively unremarkable with neat appearance, cooperative attitude, good eye contact, intact cognition, memory, concentration, insight and judgment, and Dr. Mansoor made no change in Plaintiff's medications; on November 10, 2016, another provider noted that Plaintiff was anxious but attentive, with coherent thought processes and no suicidal or homicidal ideation; Plaintiff reported to Dr. Mansoor in December 2016 that she was doing better and had no new complaints; the mental status examination was unremarkable and Dr. Mansoor noted stable mood and affect with intact cognition and memory and commented that Plaintiff had no impairments in her functional status; on February 21, 2017, Harold Goldstein, Ph.D., a state agency consultative examiner, examined Plaintiff and noted adequate grooming, normal speech, normal psychomotor activity, and neutral mood with full affect; Plaintiff related appropriately throughout the interview and answered all questions asked of her, demonstrated adequate social judgment, and did not exhibit any thought disorder or psychotic symptoms, but demonstrated adequate memory, adequate concentration, poor fund of knowledge and poor abstract reasoning; on May 9, 2017, Plaintiff began an intensive outpatient program with stress management and individual and group therapy; those therapy records reflect that Plaintiff set therapy goals, engaged in group therapy discussions, reported a good relationship with family members and, while anxious with a depressed mood and affect, she presented as cooperative with good eye

17

contact, normal speech, goal-directed thought processes, intact memory and judgment; Plaintiff reported to Nurse Green in June, July, and October 2017 that she felt worse, and Nurse Green noted impaired memory, attention and concentration and noted Plaintiff's functional status as moderately impaired; in January and April 2018, Plaintiff presented to Nurse Green as neat and cooperative with good eye contact, normal speech, and sad/depressed mood and affect, and exhibited circumstantial thought processes, intact cognition, memory, attention and concentration, and insight and judgment, and Plaintiff denied hallucinations, delusions, suicidal ideation and homicidal ideation; Nurse Green described Plaintiff's functional status as not impaired, and reported that Plaintiff was able to function at her baseline; on July 18, 2018, although Plaintiff stated to Nurse Green that she was doing worse, her symptoms and mental status examination were unchanged from April 2018; Nurse Green described Plaintiff's functional status as not impaired and reported in August 2018 that Plaintiff's mental status and functional status were unchanged and her depression was partially improved; Plaintiff attended group therapy in August and September 2018; Dr. Abrams' findings in August 2018, and her September 2018 opinions; Nurse Green's August 2018 opinion; the March 2017 opinion of the state agency reviewing physician, Jesus Soto, Ph.D., that Plaintiff retained the ability to learn, understand, remember and carry out simple work instructions; maintain attention and concentration for two-hour periods without undue interruptions; perform as per schedule and routine; appropriately interact with supervisors, coworkers and others; and adequately complete a normal workweek and workday; Dr. Mansoor's Questionnaire opinions; Nurse Green's September 2018 opinions; the fact that Plaintiff apparently had no difficulty understanding or following instructions when completing a function report dated December 3, 2016; the fact that treatment "was generally successful in controlling" allegedly disabling symptoms[,]" *i.e.*, when

Nurse Green described Plaintiff's functional status as not impaired on July 18, 2018, and

reported in August 2018, that Plaintiff's mental status and functional status were unchanged and

depression was improved; and the fact that Plaintiff's work history over the course of a number

of years was consistent with competitive full time employment that does not support a finding of

disability absent objective evidence of disabling symptoms and limitations. R. 26–34.

> The ALJ also went on to explain Plaintiff's RFC determination as follows:

> As a result of her mental health impairments and symptoms, the claimant is limited to simple, routine and repetitive tasks in a low-stress setting, defined as having only occasional changes in work setting and only occasional interaction with the public. These restrictions fully accommodate the claimant's "moderate" difficulties in the domains of interacting with others and concentrating, persisting or maintaining pace, discussed in detail above. No further restrictions are supported by the weight of the objective mental health evidence of record.

R. 28.

> In sum, the above residual functional capacity assessment is supported by the record as a whole in this case, and indicates that the claimant's limitations will not interfere with his/her ability to function independently, appropriately, effectively, and on a sustained basis within the residual functional capacity defined above. I considered the claimant's allegations and found them inconsistent with and not well supported by the objective medical findings in the record. In addition, I considered the reports of the state agency medical consultants as well as reports from other treating, examining and non-examining medical sources.

R. 34; *see also* R. 29 ("These unremarkable findings [by Dr. Mansoor in December 2016]

support the residual functional capacity above and do not support the degree of limitation the

claimant alleges" and "Dr. Goldstein [the state agency consultative examiner] did not offer

conclusions as to work-related limitations, however, his observations and examination findings

[in February 2016] were considered in determining the residual functional capacity, as they are

consistent with the record as a whole."); R. 30 (acknowledging that Plaintiff's "anxiety and

depression symptoms wax and wane, but overall, they are stable with treatment. I fully

accommodated the claimant's waxing and waning mental symptoms in the residual functional

capacity described above with limitations to simple, routine and repetitive tasks in a low stress setting, defined as having only occasional changes in work setting and only occasional interaction with the public"). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

However, Plaintiff challenges this RFC determination, arguing that the ALJ erred when assessing Dr. Mansoor's Questionnaire opinions, Nurse Green's August 2018 opinion and September 2018 opinions, as well as Dr. Abrams' September 2018 opinions. *Plaintiff's Brief*, ECF No. 16, pp. 16–30. For the reasons that follow, Plaintiff's arguments are not well taken.

### 1.    Dr. Mansoor

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

20

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §

404.1527(c)(1)–(6).[8] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, the ALJ assigned "little weight" to Dr. Mansoor's Questionnaire opinions, reasoning as follows:

> I further note that in an undated (fax date is 6/8/2017) mental impairment questionnaire, Dr. Mansoor indicated that the claimant was unable to work due to the severity of her sadness and inability to stay on task and focus. He listed her symptoms as depressed mood, persistent or generalized anxiety, feelings of guilt or worthlessness, hostility or irritability, manic syndrome, anhedonia, decreased energy, obsessions or compulsions, difficulty thinking or concentrating, easy distractibility, flight of ideas, intrusive recollections or a traumatic experience, recurrent panic attacks, and difficulty sleeping. Dr. Mansoor originally checked the boxes for none to mild limitations in the claimant's ability to remember locations and work-like procedures, but changed his response to moderate. He then crossed that out and changed it to moderate to marked. Dr. Mansoor wrote moderate limitations for the claimant's ability to understand and remember one to two step instructions, understand and remember detailed instructions, and carry out simple, one-step instructions, but crossed that response out and changed to marked. Dr.

---

[8] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017). Plaintiff filed her claim in October 2016.

Mansoor further indicated that the claimant had moderate to marked limitations in her ability to carry out detailed instructions; perform activities within a schedule; be punctual; sustain ordinary routine without supervision; work in coordination with others; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; maintain socially appropriate behavior; and adhere to standards of neatness. Dr. Mansoor also opined that the claimant had marked limitations in her ability to maintain attention and concentration for extended periods; make simple work-related decisions; complete a normal workday; perform at a consistent pace; ask simple questions or request assistance; respond appropriately to workplace changes; be aware of hazards; travel in unfamiliar places; use public transportation; set realistic goals and make plans independently. In addition, Dr. Mansoor opined that the claimant would likely be absent from work more than three times a month (Exhibit 15F).

While Dr. Mansoor is the claimant's treating physician, I give little weight to his opinion, as it is not consistent with his treatment notes or the record as a whole. For example, there is no evidence of manic syndrome or flight of ideas in the medical evidence of record, and obsessions are only noted in the report from Dr. Abrams. Furthermore, the claimant drives, which even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. In addition, the claimant was on time for all her therapy sessions and presented with socially appropriate behavior and adequate grooming and hygiene.

R. 31–32.

Plaintiff argues that the ALJ's evaluation of Dr. Mansoor's Questionnaire opinions was deficient, contending that these opinions were well-supported considering the factors under 20 C.F.R. § 404.1527(c), and entitled to controlling weight, pointing to evidence that she believes supports her position. R. 18–25. Plaintiff's arguments are not well taken. As a preliminary matter, "an ALJ need only 'explain his evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'" *Samah*, 2018 WL 6178862, at *5 (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Jones*, 364 F.3d at 505 (stating that the ALJ is not required to "use particular language or adhere to a particular format in conducting his [or her] analysis" and instead must only "ensure that there is sufficient development of the record

and explanation of findings to permit meaningful review"); *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("Although the ALJ did not specifically identify each factor [under 20 C.F.R. § 404.1527(c)], all relevant factors were considered throughout the lengthy, detailed opinion.") (citations omitted). The ALJ did just that in this case. Although the ALJ did not explicitly go through a factor-by-factor analysis, she specifically considered Dr. Mansoor's numerous examinations of and treatment of Plaintiff from 2016 and 2017 at step four of the sequential evaluation. *See* R. 28−32; 20 C.F.R. § 404.1527(c)(1), (2). The ALJ also explicitly considered Dr. Mansoor's Questionnaire opinions, which expressly identified his specialty as psychiatry. R. 31−32, 508. In addition, as detailed above, the ALJ explained that she discounted Dr. Mansoor's Questionnaire opinions because it was not consistent with his treatment notes or the record as a whole. R. 32 (detailing examples of inconsistencies); *see also* 20 C.F.R. § 404.1527(c)(3), (4), (6); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) ("Since, as set forth above, Dr. Rasheed's medical opinion is contradicted by several pieces of evidence in the record and also contains internal inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating physician's opinion.") (citations omitted); *Metzger v. Saul*, No. CV 19-270, 2019 WL 3530442, at *7 (E.D. Pa. Aug. 2, 2019) ("[C]ourts have consistently held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes.") (collecting cases). Moreover, although Plaintiff points to some contrary evidence in the record, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual

24

determinations [under the substantial evidence standard].”); *Hatton v. Comm’r of Soc. Sec. Admin.*, 131 F. App’x 877, 880 (3d Cir. 2005) (“When ‘presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.’”) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Davison v. Comm’r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) (“The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements.”); *Lewis v. Comm’r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) (“Though the Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal issues with executive function and mental capabilities.”).

Plaintiff further contends that the ALJ erred when discounting Dr. Mansoor’s Questionnaire opinions based on Plaintiff’s ability to drive because “Dr. Mansoor never stated Plaintiff is unable to drive” and her “ability to drive has no relationship to what she can do in a competitive work environment 8 hours a day, 40 hours a week[.]” *Plaintiff’s Brief*, ECF No. 16, p. 21. However, as set forth above, the ALJ noted Plaintiff’s ability to drive as merely one factor in his assessment of her ability to concentrate and remember. R. 32. The Court finds no error with the ALJ’s reasoning in this regard. *See* 20 C.F.R. § 404.1527(c)(4); *Celento v. Comm’r Soc. Sec.*, 613 F. App’x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving “require at least some . . . mental concentration”); *D.C. v. Comm’r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) (“*Her ability to drive*, prepare meals, manage funds, shop, and take a cruise *also contradicted her claims that she had difficulty*

*concentrating, remembering information*, and engaging in social activities.") (emphasis added); *Smith v. Comm'r of Soc. Sec.*, No. CV 19-20682, 2020 WL 7396355, at *9 (D.N.J. Dec. 17, 2020) (finding that the ALJ properly considered, *inter alia*, the claimant's ability to drive "when deciding what weight to give medical opinions").

Plaintiff goes on to complain that the ALJ erred in evaluating Dr. Mansoor's Questionnaire opinions because "to reject a treating doctor's report because the patient has enough trust in treatment to attend is ludicrous." *Plaintiff's Brief*, ECF No. 16, p. 22. Plaintiff, however, mischaracterizes the ALJ's reference to therapy when discounting these opinions: The ALJ noted that plaintiff "was on time for all her therapy sessions and presented with socially appropriate behavior and grooming and hygiene," R. 32, as evidence that was inconsistent with Dr. Mansoor's opinion that Plaintiff had moderate to marked limitations in, *inter alia*, her abilities to "be punctual" and "maintain socially appropriate behavior; and adhere to standards of neatness[,]" *id*. The ALJ did not err in this regard. *See* 20 C.F.R. § 404.1527(c)(4).

Plaintiff also challenges the ALJ's consideration of Plaintiff's daily activities, arguing that the Acting Commissioner's "Regulations have also cautioned against placing excessive weight on a claimant's daily activities in the context of claims that involve mental impairments." *Plaintiff's Brief*, ECF No. 16, pp. 21−22 (citing 20 C.F.R. Pt. 404, App'x. 1 of Subpart P § 12.00(D)(3)(a)). Again, however, Plaintiff's activities of daily living were but one of many factors that the ALJ appropriately considered when evaluating Dr. Mansoor's Questionnaire opinions and crafting the RFC. R. 32−33; *see also Cunningham v. Comm'r of Soc. Sec*., 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity.").

Plaintiff also complains that the ALJ erred by crediting the opinion of the state agency reviewing psychologist, Jesus Soto, Ph.D., when the applicable regulations provide that such opinions are generally entitled to the least amount of weight and where Dr. Soto reviewed "a nearly empty medical record" that did not contain opinions from treating or examining specialists or "more than two years of psychiatric treatment records that substantiate every opinion from a treating and examining mental health specialist who agreed [Plaintiff] is mentally disabled." *Plaintiff's Brief*, ECF No. 16, pp. 22–24. Plaintiff's argument in this regard is not well taken.

State agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Here, the ALJ considered Dr. Soto's opinion rendered in March 2017 and assigned it "great weight," reasoning as follows:

> Turning now to the medical opinions related to the claimant's mental health impairments, I note that non-examining, state agency psychologist, Jesus Soto, PhD opined in March of 2017 that the claimant retained the ability to learn, understand, remember and carry out simple work instructions; maintain attention and concentration for two-hour periods without undue interruptions; perform as per schedule and routine; appropriately interact with supervisors, coworkers and others; and adequately complete a normal workweek and workday (Exhibit 1A). I give great weight to the medical opinion from Dr. Soto, as he is a mental health professional with Social Security disability program expertise and experience evaluating Social Security disability cases. While he lacked the opportunity to review the entire medical record including recent, hearing level, medical exhibits, his opinion is consistent with the claimant's[] activities of daily living and the record as a whole.

R. 31. As detailed above, the ALJ explicitly acknowledged that Dr. Soto did not have the benefit of the entire record when he rendered his opinions, but the ALJ nevertheless concluded that those opinions as to Plaintiff's functional limitations were consistent with her daily activities and the record as a whole. *See id.* In short, the ALJ did not err in assigning great weight to Dr. Soto's March 2017 opinion simply because additional medical evidence was later submitted. *See Chandler*, 667 F.3d at 361; *Wilson*, 331 F. App'x at 919.

Moreover, "[s]imply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not, as discussed in the aforementioned precedent, mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 3:14-CV-2337, 2016 WL 1071021, at *12 (M.D. Pa. Mar. 17, 2016); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration"). For all these reasons, the Court finds that the ALJ's evaluation of Dr. Mansoor's Questionnaire opinions enjoy substantial support in the record.

## 2. Nurse Green

Plaintiff also challenges the ALJ's evaluation of Nurse Green's August 2018 opinion and September 2018 opinion. *Plaintiff's Brief*, ECF No. 16, pp. 25−28. Plaintiff concedes that Nurse Green is "not technically [an] 'acceptable medical source;'" however, Plaintiff nevertheless contends that the ALJ failed to "properly consider" Nurse Green's opinions and mischaracterized her opinions as opinions on issues "reserved for the Commissioner." *Id*. This Court disagrees.

Here, the ALJ explicitly considered Nurse Green's August 2018 opinion and September 2018 opinion, but assigned them "little weight," reasoning as follows:

> I also note that in August of 2018, Ms. Green opined that the claimant was unable to return to work at any work setting (Exhibit 12F, 18F, 19F). On September 25, 2018, Ms. Green opined that the claimant had marked limitations in her ability to remember locations and work-like procedures; understand and remember one to two step instructions; understand and remember detailed instructions; carry out simple, one-step instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; be punctual; sustain ordinary routine without supervision; work in coordination with others; make simple work-related decisions; complete a normal workday; perform at a consistent pace; interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; maintain socially appropriate behavior; adhere to basic standards of neatness; respond appropriately to workplace changes; be aware of hazards; travel in unfamiliar places; use public transportation; set realistic goals; and make plans independently. Ms. Green also opined that the claimant would likely be absent from work more than three times a month (Exhibit 17F). I note that Ms. Green originally indicated that the claimant had moderate to marked limitations in her ability to remember locations and work-like procedures; understand and remember one to two step instructions; understand and remember detailed instructions; and be aware of hazards but scratched out that answer and selected "marked" limitations.
>
> I give little weight to the opinions of Ms. Green. First, the issue of disability is reserved for the Commissioner. Second, Ms. Green's opinions are inconsistent with the record as a whole. For example, the claimant drives, which even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. Furthermore, the claimant attended and was on time for all her therapy sessions and presented with socially appropriate behavior and

adequate grooming and hygiene. In addition, the treatment notes of record indicate that the claimant was able to set realistic treatment goals and get along with others in group therapy.

R. 32−33.

The Court finds no error with the ALJ's consideration of Nurse Green's August 2018 and September 2018 opinions. As a preliminary matter, "[n]urses are not 'acceptable medical sources' under the regulations for claims filed before March 27, 2017." *Williams v. Saul*, No. CV 17-00234, 2019 WL 5061239, at *3 (D.N.J. Oct. 9, 2019).[9] Opinions from those who are not acceptable medical sources "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1). When considering opinions from non-acceptable medical sources, an ALJ may refer to the factors identified in 20 C.F.R. § 404.1527(c), but need not refer to every such factor. 20 C.F.R. § 404.1527(f)(1).Moreover, an ALJ is not required to consider opinions from those who are not acceptable medical sources. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361–62 (3d Cir. 2011) (stating that "the ALJ was not required to consider [the nurse practitioner's] opinion at all because, as a nurse practitioner, she is not an 'acceptable medical source'"); *Favors v. Berryhill*, No. CV 18-234, 2019 WL 928417, at *8 (D.N.J. Feb. 26, 2019) ("[I]n fact, the ALJ was not *required* to consider [the advanced practice nurse's] opinion at all.") (emphasis in the original) (citing *Chandler*, 667 F. 3d at 361−62). Here, the ALJ specifically considered Nurse Green's August 2018 opinion and discounted it because "the issue of disability is reserved to the Commissioner." R. 32. Plaintiff challenges this finding, arguing that this is a mischaracterization

---

[9] "For claims filed after March 27, 2017, licensed advanced practice registered nurses and licensed physician assistants are considered acceptable medical sources for impairments within their licensed scope of practice." *Williams v. Saul*, No. CV 17-00234, 2019 WL 5061239, at *3 (D.N.J. Oct. 9, 2019) (citing 20 C.F.R. § 416.902(a)(7)−(8)). As previously noted, Plaintiff's claim was filed in October 2016.

of Nurse Green's findings, which were really medical opinions and not simply "bald legal opinions that [Plaintiff] is 'disabled[.]'" *Plaintiff's Brief*, ECF No. 16, pp. 26−27. To the contrary, Nurse Green's August 2018 opinion is simply a legal conclusion: She opined that Plaintiff "was "unable to return to work at any work setting[.]" R. 483, 526, 547, 560, 566. The ALJ properly declined to give this opinion more weight because Plaintiff's employability is in fact an issue reserved to the Commissioner. R. 32; *see also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

In any event, the ALJ also explained that she discounted Nurse Green's opinions because they were inconsistent with the record as a whole. R. 32−33 (providing examples of such inconsistencies). Plaintiff challenges these representative inconsistencies, arguing that the ability to drive and participate in therapy were not sufficient reasons to discount Nurse Green's opinions. *Plaintiff's Brief*, ECF No. 16, p. 26. However, for the same reasons previously explained above, in relation to the ALJ's evaluation of Dr. Mansoor's Questionnaire opinions, the ALJ properly considered Plaintiff's ability to drive as inconsistent with Nurse Green's finding of marked limitations in Plaintiff's abilities to understand and remember instructions and maintain attention and concentration for extended periods and that her ability to attend therapy sessions on time was inconsistent with Nurse Green's opinion that Plaintiff was markedly limited in her ability to perform activities within a schedule and be punctual. R. 32−33. At bottom,

substantial evidence supports the ALJ's evaluation of Nurse Green's August 2018 and

September 2018 opinions.

### 3.      Dr. Abrams

Plaintiff also challenge the ALJ's consideration of Dr. Abrams' September 2018 opinion.

*Plaintiff's Brief*, ECF No. 16, pp. 28−30. The ALJ assigned "some weight" to this opinion,

reasoning as follows:

> I note that after seeing the claimant on only two occasions, Dr. Abrams opined on September 9, 2018 that the claimant had none to mild limitations in her ability to interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; and maintain socially appropriate behavior. She opined that the claimant had moderate limitations in her ability to remember locations and work-like procedures; understand and remember one to two step instructions; understand and remember detailed instructions; carry out simple, one-step instructions; work in coordination with others; respond appropriately to workplace changes; be aware of hazards; travel in unfamiliar places; and use public transportation. Dr. Abrams further opined that the claimant had moderate to marked limitations in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; be punctual; make simple work-related decisions; and set realistic goals. Finally, Dr. Abrams opined that the claimant had marked limitations in her ability to sustain ordinary routine without supervision, complete a normal workday and perform at a consistent pace (Exhibit 16F).
>
> I give some weight to the opinion of Dr. Abrams, as she is a mental health professional and her opinion for the claimant's mild and moderate limitations is somewhat consistent with the record as a whole. However, Dr. Abrams saw the claimant on only two occasions, and her opinion of moderate to marked and marked limitations is inconsistent with the record as a whole. For example, the claimant was able to maintain attention and concentration to complete all psychological testing presented by Dr. Abrams, and attends all her scheduled appointments on time.

R. 31.

Plaintiff argues that the ALJ erred by appearing to credit Dr. Abrams' findings of

moderate limitations but then failed to accommodate such limitations in the RFC. *Plaintiff's*

*Brief*, ECF No. 16, pp. 28−29. This Court disagrees. While Plaintiff contends that the ALJ "did

not find that [the Plaintiff] has any limitations remember [sic] locations or work-like procedure, understanding, remembering, and carrying out simple one-to-two step instructions, or working without being distracted by others[,]" *id.* at 29, the ALJ specifically limited Plaintiff to "simple, routine and repetitive tasks in a low-stress setting, defined as having only occasional changes in work setting and only occasional interaction with the public." R. 25. Moreover, the ALJ explained how those restrictions accommodated these limitations, R. 28 ("As a result of her mental health impairments and symptoms, the claimant is limited to simple, routine and repetitive tasks in a low-stress setting, defined as having only occasional changes in work setting and only occasional interaction with the public. These restrictions fully accommodate the claimant's 'moderate' difficulties in the domains of interacting with others and concentrating, persisting or maintaining pace, discussed in detail above."). *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) ("[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"). Notably, Plaintiff does not point to any different or additional limitations that the ALJ should have included in the RFC flowing from these moderate limitations. *See Plaintiff's Brief*, ECF No. 16, pp. 28–30; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Plaintiff also contends that the ALJ erred to the extent that she rejected Dr. Abrams' opinions of moderate to marked limitations and marked limitations. *Plaintiff's Brief*, ECF No. 16, pp. 29–30. Plaintiff complains that "[t]he fact that Dr. Abrams is not a treating source does not automatically mean that her opinions are not valid." *Id*. at 30. However, the ALJ did not

"automatically" reject these limitations on this basis; instead, as set forth above, the ALJ

properly considered that Dr. Abrams examined Plaintiff on only two occasions, which was only

one of the factors considered in discounting Dr. Abrams' moderate to marked limitations and

marked limitations. R. 31.

Plaintiff further argues that the ALJ erred when she discounted these limitations because,

*inter alia*, Plaintiff was able to attend her scheduled appointments on time and was able to

complete Dr. Abrams' psychological testing. *Plaintiff's Brief*, ECF No. 16, pp. 29–30. This

Court disagrees. For the reasons previously explained in relation to the ALJ's discounting of Dr.

Mansoor's Questionnaire opinions and Nurse Green's August 2018 opinion and September 2018

opinion, the ALJ properly noted that Plaintiff's ability to attend appointments on time was

inconsistent with a finding of moderate to marked limitations in Plaintiff's ability to perform

activities within a schedule and to consistently be punctual. R. 31. In addition, the ALJ properly

considered that Plaintiff's ability to complete Dr. Abrams psychological testing was inconsistent

with that doctor's opinion of moderate to marked limitations and marked limitations in activities

requiring concentration. *Id.*; *see also Smith*, 2020 WL 7396355, at *9 (finding that the ALJ

properly considered that "'the record fails to show consistent mention of distractibility or the

claimant having an inability to complete testing that assesses concentration and attention'" when

deciding what weight to give medical opinions).

Finally, in challenging the ALJ's evaluation of Dr. Abrams' September 2018 opinions,

Plaintiff refers to cherry picking, but does not explain how the ALJ engaged in improper cherry

picking. *Plaintiff's Brief*, ECF No. 16, p. 29. To the extent that Plaintiff at times pointed to some

contrary evidence in the record, this effort does not establish impermissible cherry picking and

the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify

34

the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Davison v. Comm'r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."); *Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Though the Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal issues with executive function and mental capabilities.").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her evaluation of Dr. Mansoor's Questionnaire opinions, Nurse Green's August 2018 opinion and September 2018 opinion, and Dr. Abrams' September 2018 opinion.

### B.   Subjective Complaints

Plaintiff also contends that the ALJ erred in evaluating her subjective complaints, complaining that the ALJ mischaracterized the evidence and did not support her rationale for

discounting Plaintiff's complaints. *Plaintiff's Brief*, ECF No. 16, pp. 30−34. Plaintiff's

arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the

ALJ "must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[10]

   Here, the ALJ followed this two-step evaluation process in  her consideration of

Plaintiff's subjective complaints. R. 26–34. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but also found that

Plaintiff's statements "concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record

for the reasons explained in this decision." R. 26; *see also* R. 33 (specifically stating that she

considered Plaintiff's subjective complaints and the relevant factors). As previously discussed,

the ALJ detailed the medical evidence and other evidence to support her findings. R. 26–34. In

considering this evidence, the ALJ noted that Plaintiff's "course of treatment with regard to her

mental impairments has been routine and conservative, which does not support her allegations of

disabling limitations related to these symptoms." R. 28. The ALJ also explained as follows:

---

[10]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

> In sum, the above residual functional capacity assessment is supported by the record as a whole in this case, and indicates that the claimant's limitations will not interfere with his/her ability to function independently, appropriately, effectively, and on a sustained basis within the residual functional capacity defined above. I considered the claimant's allegations and found them inconsistent with and not well supported by the objective medical findings in the record. In addition, I considered the reports of the state agency medical consultants as well as reports from other treating, examining and non-examining medical sources.

R. 34. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges this finding, arguing that "the ALJ's conclusion that mental status exam findings are 'unremarkable' is a gross mischaracterization of the record[.]" *Plaintiff's Brief*, ECF No. 16, p. 32. Plaintiff's argument is not well taken. A review of the medical record detailed above reveals that the ALJ fairly characterized the mental examination findings. R. 28–32. As previously discussed, to the extent that Plaintiff points to some contrary evidence in the record, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201. Similarly, to the extent that Plaintiff complains that the ALJ considered Plaintiff's activities of daily living, including her participation in therapy, *Plaintiff's Brief*, ECF No. 16, pp. 32–33, that argument is unavailing for the reasons explained earlier in this decision. *See also* 20 C.F.R. §§ 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities); *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility.").

Plaintiff goes on to complain that the ALJ "erred by criticizing [Plaintiff's] treatment as 'routine and conservative' with one brief gap in her treatment (Tr. 28-29). In modern medicine,

psychiatric conditions are not ordinarily treated by means other than psychotropic medications and therapy, as is the case here." *Plaintiff's Brief*, ECF No. 16, p. 33. Setting aside that Plaintiff cites to one website and an unreported district court decision from outside this circuit to support this assertion, these were just two factors that the ALJ considered when assessing Plaintiff's subjective complaints in addition to her consideration of years of record evidence. R. 26−34. In any event, Plaintiff wholly fails to explain why the ALJ erred in considering Plaintiff's gap in treatment between April and July 2018, R. 29, when assessing her subjective complaints. *See Plaintiff's Brief*, ECF No. 16, p. 33; *see also Davis v. Saul*, No. CV 18-4288, 2019 WL 2525447, at *5 (E.D. Pa. June 18, 2019) ("Contrary to Plaintiff's assertion, it was not improper for the ALJ to consider evidence of gaps in treatment when assessing the limiting effects of Plaintiff's impairments. The ALJ reasonably considered this evidence because treatment history is a relevant factor in evaluating the intensity, persistence, and limiting effects of Plaintiff's subjective complaints.").

Finally, Plaintiff argues that the ALJ "failed to cite to any evidence to support her conclusory finding that [Plaintiff's] treatment has resulted in a significant and sustained response to treatment (Tr. 33);" to the contrary, Plaintiff contends, she experienced only a modest, short-lived improvement. *Plaintiff's Brief*, ECF No. 33−34. Plaintiff mischaracterizes the ALJ's findings in this regard. Notably, the ALJ found that "treatment was generally successful in controlling those [allegedly disabling] symptoms." R. 33. The ALJ went on to cite to specific evidence reflecting some improvement. *Id*. ("[O]n July 18, 2018, Ms. Green described the claimant's functional status as not impaired and in August of 2018, reported that the claimant's mental status and functional status were unchanged and her depression was partially improved (Exhibits 12F, 18F & 19F)."); *see also* R. 30 (acknowledging that Plaintiff's "anxiety and

depression symptoms wax and wane, but overall, they are stable with treatment" and explaining how the RFC found by the ALJ accommodates Plaintiff's "waxing and waning mental symptoms"). Plaintiff has not persuaded this Court that this record requires remand.

For all these reasons, the Court finds that the ALJ sufficiently explained the reasoning applied in evaluating Plaintiff's subjective complaints and her findings are entitled to this Court's deference. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; SSR 16-3p.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 21, 2021                           _____*s/Norah McCann King*_____
                                                                    NORAH McCANN KING
                                                             UNITED STATES MAGISTRATE JUDGE